[Civ. No. 21299. Second Dist., Div. One. Apr. 18, 1956.]

DOROTHY BLACKBURN, as Administratrix, etc., Respondent, v. CONSOLIDATED ROCK PRODUCTS COMPANY, Appellant.

Schell, Delamer & Loring for Appellant.

I. W. Rainer and Frank J. Sexton for Respondent.

DORAN, J.—This is an appeal from a judgment awarding plaintiff the sum of $65,000 for the wrongful death of plaintiff's husband, James Blackburn. The complaint alleges that on April 1, 1953, the decedent was, "by the express invitation of the defendant," upon the gravel quarry premises of the defendant; that the defendant "so carelessly, negligently and unlawfully maintained, operated and controlled said premises as to cause some hard rock-like object to strike the body of said JAMES BLACKBURN, deceased," proximately causing death. Defendant's answer in addition to a general denial, pleaded contributory negligence and unavoidable accident. A jury returned a verdict of $100,000 which was later reduced by plaintiff's remittitur to $65,000 upon denial of a motion for a new trial.

The decedent, a truck driver, was in the employ of one Christiana, who had a contract to haul material from the defendant's gravel quarry to a mill or processing plant. The quarry is a large pit with sloping walls approximately 110 feet high, and the method of operation involves the use of a crane working from the top of the pit which in turn operates a scarifier attached to a drag line. This procedure causes the earth to be loosened and rocks and gravel to fall to the bottom of the pit where a large power shovel loaded the material into trucks.

From the record it appears that a safety engineer made an inspection of the slopes approximately once a month; that the pit contained no warning signs, and had no watchmen or guards to warn men in the quarry when loose rocks were about to fall; that when the crane was working rocks would fall "all over the place." The decedent had been employed for approximately five weeks prior to the accident.

On the day of the accident the truck which Blackburn, the deceased, had been driving, suffered a broken axle. Blackburn was then assigned another truck, and immediately preceding the accident this truck was being loaded by the power shovel. Christiana, the decedent's employer, was engaged in attempting to repair the disabled truck which was located about 25 feet from the bank and some 45 feet from the power shovel. The crane was not operating on the day of the accident. The decedent went over to help Christiana with the disabled truck,

and a witness testified to having seen the employer Christiana motion to the decedent to come over. Christiana denied calling Blackburn, stating, ''No, I didn't call him over. He walked over by himself.''

Christiana, who was on the opposite side of the disabled truck from Blackburn, had been trying to remove the broken axle, and testified, ''I had trouble getting the broken piece out and just as I was picking up my tools to go back to get some more tools to use when it happened.'' Christiana heard Blackburn ''yell like in pain,'' and found the latter ''laying parallel with the truck right in front of the back wheel. . . . Well, he said a rock had hit him and he said, 'You better call an ambulance,' so I told him to lay quiet and I took off to call the ambulance. . . . he was clutching at his side with his hand and he was kind of drawn up like he was in pain.''

Christiana did not look for any rocks at the time, and did not see or hear any falling rocks nor ''observe any dust in the air.'' It was the autopsy surgeon's opinion that Blackburn was killed by an irregular shaped object, and that ''it would be improbable'' that an object an inch in diameter caused the injury.

As against plaintiff's contention that Mr. Blackburn's death was due to the defendant's negligent maintenance of the quarry bank, causing a rock to fall, defendant argues that ''the more logical and probable cause of death . . . was occasioned by the conduct of Mr. Christiana, the employer of the deceased . . . in attempting to knock out a broken axle part, used the—long crowbar, struck it with a sledge hammer, causing it to go through the other side of the truck and violently strike the deceased.'' The respondent's brief calls attention to the fact that the shovel operator who walked over to Blackburn's side, ''found no evidence of tools or steel objects of any kind around the scene of the accident.'' Appellant's brief also states that if a rock did strike the decedent, the latter ''had assumed the risk by wandering away from his truck and duties.''

■ Appellant seeks a reversal of the judgment on the ground that the trial court erred in the giving of an instruction which stated: ''During the trial of this case you heard something said about 'assumption of risk.' The plaintiff did not assume the risk of any injury that could have come to him only through the negligence of the defendant or of said defendant's agents or employees.'' It is claimed that this instruction ''could be tantamount to the court declaring that

the deceased, James Blackburn, had not assumed any risk under the facts as a matter of law. This could not have been the intention of the court since it had previously instructed the jury on the legal principles of assumption of risk by three other instructions.''

As pointed out by the respondent, ''Assumption of risk was not pleaded as a defense, and the evidence, as a matter of fact, presented no such issue.'' Moreover, the record discloses that the court had previously given three full and clear instructions on this subject, and had admonished the jury ''not to single out any certain instruction and ignore the others but as to consider all the instructions as a whole and to regard each in the light of the others.'' Considering the instructions as an entirety, the circumstances of the accident, and the evidence in reference thereto which furnishes substantial support for the verdict and judgment, it cannot be said that this isolated instruction resulted in any miscarriage of justice.

In *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904], cited by appellant, the reviewing court held that it was not prejudicial error for the trial court to refuse to give such a requested instruction, which was erroneous, but did not hold that the giving of an instruction of that nature would necessarily amount to reversible error. On the contrary, in *Lunsford* v. *Standard Oil Co.*, 84 Cal.App.2d 459 [191 P.2d 82], it was held that while that type of instruction, with others given, may not be a model, it would not mislead the jury where active operating negligence existed, and under the facts of that case could not be deemed reversible error. Such is the situation in the instant case. Nor is any other reversible error found in the instructions, taken as an entirety.

Appellant's contention that reversible error was committed in the refusing of certain requested instructions, is likewise without merit. By way of B.A.J.I. and other instructions, the trial judge adequately covered the situation as presented by the evidence and appellant's argument that incorrect instructions given, plus the failure to give requested instructions, ''actually provided no legal guidance for the jury upon which to base their consideration,'' is untenable. This is particularly true in reference to the subject of res ipsa loquitur, where the special circumstances necessary to the application of that rule, were adequately presented by the instructions given. So likewise, the jury was given proper instructions on the status of the decedent as an invitee. If,

as testified to by the power shovel operator, Christiana motioned the decedent to come over to the disabled truck, the decedent had not stepped outside the scope of the invitation.

Other specifications of error relate to alleged "Prejudicial misconduct and errors resulting in unfair trial to defendant," particularly, "Unnecessary and improper reference to and emphasis on the large size and wealth of the corporate defendant." A survey of the record discloses various remarks, allusions, and examples of conduct on the part of the participating attorneys, occurring in the heat of trial, which might well have been omitted, but nothing which can be deemed to have deprived the defendant of a fair trial or which can justify a reversal herein.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 9, 1956.